540 So.2d 988 (1989)
Bobby R. SAFFEL, et al., Plaintiffs-Appellants,
v.
James L. BAMBURG, et al., Defendants-Appellees.
Ellis L. COLEMAN, Sr., et al., Plaintiffs-Appellees,
v.
James L. BAMBURG, et al., Defendants-Appellants.
Nos. 20,352-CA, 20,353-CA.
Court of Appeal of Louisiana, Second Circuit.
February 22, 1989.
Writs Denied May 12, 1989.
Charles Wilson Seaman, Natchitoches, for plaintiffs-appellants Bobby R. Saffel, et al.
James Edward Beal, Natchitoches, for plaintiffs-appellees Ellis L. Coleman, Sr., et al.
Watson, Murchison, Crews, Arthur & Corkern, Natchitoches, by Joseph B. Stamey, for defendant James L. Bamburg.
Mayer, Smith & Roberts by David F. Butterfield, Shreveport, for defendant-appellant Empire Fire & Marine Ins.
Brittain, Williams, et al., by Joseph Payne Williams, Natchitoches, for defendant-appellee Shelter Mutual Ins.
Bodenheimer, Jones, Klotz and Simmons by James P. Bodenheimer, Shreveport, for defendant-appellee Economy Fire & Cas. Ins. Co.
*989 Before MARVIN, LINDSAY and HIGHTOWER, JJ.
HIGHTOWER, Judge.
This appeal results from consolidated suits growing out of an automobile accident. On October 18, 1983, a 1983 Buick owned by Ellis L. Coleman, Sr. and his wife, Myrtle, was traveling south on U.S. 71 near Coushatta. Mrs. Coleman was the driver, and her daughter, Patti, and Mrs. Katherine G. Saffel were passengers. James L. Bamburg, who had clearly been drinking, was operating a 1974 Chevrolet Nova owned by Rodney Messick in a northerly direction, and struck the Coleman vehicle head-on after crossing the center line. Mrs. Coleman and Mrs. Saffel were killed, and Patti Coleman received serious personal injuries. Bamburg was solely at fault in causing the collision, and apparently had no liability insurance of his own.

THE COLEMAN APPEAL
Mr. Coleman, and his three major children, Patti Coleman, Ellis Lee Coleman, Jr., and Donna Elizabeth Coleman, filed suit for the wrongful death of Mrs. Coleman. Patti Coleman also sought recovery for her own injuries. The original petition named as defendants James L. Bamburg (Bamburg), Shelter Mutual Insurance Company (Shelter), Hartford Accident and Indemnity Company (Hartford), State Farm Mutual Automobile Insurance Company (State Farm), and Bankers and Shippers of New York (Bankers). Shelter provided liability insurance for James Bamburg's father, Charles, and Hartford was Messick's insurer. State Farm provided uninsured motorist protection for the Coleman Buick and also for Patti. Bankers was sued on the belief that it had issued a policy affording UM coverage to Rose Trailer Toters, Inc. (Rose) of Lake Charles, Louisiana, for whom Mr. Coleman was a commercial subcontractor. However, Bankers was dismissed upon discovery that its coverage had ceased. Hartford was relieved of any further liability by court order, when it deposited its policy limits into court. A settlement and release also was confected with State Farm.
Mr. Coleman later committed suicide, and the other Colemans were substituted as parties plaintiff for their father. In the same pleading Empire Fire and Marine Insurance Company (Empire) was added as a defendant on the same basis that Bankers had been sued.
Economy Fire and Casualty Company (Economy), the liability insurer of Bamburg's mother, was later added as a defendant. It was alleged that Bamburg was an insured under his mother's policy by virtue of his residence with her. Economy filed a motion for summary judgment which was denied.
Empire filed a motion for summary judgment asserting, among other contentions, that Mrs. Coleman was not an insured for UM benefits under the policy issued to Rose. Also, in its answer, Empire advanced a peremptory exception of no cause of action, claiming the plaintiffs were attempting to impermissibly stack Empire's UM coverage with that of State Farm. Empire's motion was denied as far as the claim concerning Mrs. Coleman was concerned. The exception also was overruled.
After a jury trial, the Colemans were awarded $180,000 general damages, plus funeral expenses, against Bamburg and Empire, in solido. A credit was granted for monies previously received by the plaintiffs from the Hartford deposit. Since the court viewed the State Farm settlement as conditional, plaintiffs also were ordered to deposit the sum they accepted from State Farm into the court registry, if they actually collected from Empire. Also, for her own injuries, Patti Coleman was awarded $50,000 against Bamburg alone, subject to a credit for funds received from Hartford and State Farm. Empire was awarded indemnity from Bamburg; all demands against Shelter and Economy were rejected.
In the Coleman suit only Empire has appealed, specifying that the trial court erred: (1) in denying Empire's motion for summary judgment; (2) in overruling its exception of no cause of action; and (3) in failing to grant Empire absolute credit for *990 the UM benefits the Colemans received from State Farm.
For the reasons that follow, we conclude the trial court erred in holding that Mrs. Coleman was an insured under the Empire policy. Thus, we need not address Empire's second or third specification of error.
Mr. and Mrs. Coleman owned a 1978 GMC trailer toter which Mr. Coleman drove as a sub-contractor of Rose. The Coleman trailer toter, among some forty other vehicles, was listed as a covered auto on a policy of liability insurance which Rose had procured from Empire.
The relevant portion of the then effective Louisiana Uninsured Motorist Statute, LSA-R.S. 22:1406, stated:
D. The following provisions shall govern the issuance of uninsured motorist coverage in this state.
(1)(a) No automobile liability insurance... shall be delivered or issued for delivery in this state ... unless coverage is provided therein or supplemental thereto, in not less than the limits of bodily injury liability provided by the policy, ... for the protection of persons insured there under who are legally entitled to recover damages from owners or operators of uninsured or underinsured motor vehicles because of bodily injury, sickness, or disease, including death, resulting therefrom....
(Emphasis added.)
The Empire policy contained no provisions regarding UM coverage or a rejection thereof, but the parties correctly agree that such coverage existed by operation of law in an amount equal to that provided for bodily injury liability. See, e.g., Roger v. Estate of Moulton, 513 So.2d 1126 (La. 1987). Nonetheless, under the wording of the above quoted statute, as well as its attendant jurisprudence, one must be an insured before UM coverage is obligatory under a policy. Malbrough v. Wheat, 428 So.2d 1110 (La.App. 1st Cir.1983); Seaton v. Kelly, 339 So.2d 731 (La.1976).
In the Empire policy, Rose Trailer Toters, Inc. is the named insured and is referred to therein as "you" and "yours." Part IV of the policy, as modified by portions of a Truckers Coverage Endorsement, states "WHO IS INSURED", in pertinent part, as follows:
D. WHO IS INSURED
1. You are an insured for any covered auto.
2. Anyone else is an insured while using with your permission a covered auto you own, hire or borrow except:
a. The owner of a covered private passenger type auto you hire or borrow from one of your employees or a member of his or her household.
b. Someone using a covered auto while he or she is working in a business of selling, servicing, repairing or parking autos unless that business is yours.
c. Anyone other than your employees, a lessee or borrower or any of their employees, while moving property to or from a covered auto.
. . . .
4. The owner or anyone else from whom you hire or borrow a covered auto which is not a trailer is an insured while the covered auto:
a. Is being used exclusively in your business, and
b. Is being used over a route or territory you are authorized to serve by public authority or on its way to that route at your request.
. . . .
6. None of the following is an insured:
a. Any trucker, or his or her agents or employees, other than you and your employees.
(1) If the trucker is subject to motor carrier insurance requirements and meets them by a means other than auto liability insurance.
(2) If the trucker is insured for hired autos under an auto liability insurance policy which does not insure on a primary basis the owners of the autos and their agents and employees while the autos are being used exclusively in the trucker's business and over a route *991 or territory the trucker is authorized to serve by public authority.
. . . .
The policy defines "auto" as a land motor vehicle, trailer or semi-trailer designed for travel on public roads.
Paragraph 6, as can be observed above, simply establishes certain exclusions from "an insured," those exclusions not being applicable to Rose employees. However, it is not contended that either Ellis Coleman or Myrtle Coleman was a Rose employee.
Applying the foregoing provisions and definitions, Mrs. Coleman was not a liability insured under the Empire policy. Rose, not Mr. or Mrs. Coleman, was the named insured, and consequently only Rose was an insured for a covered auto. The Coleman trailer toter, the "covered auto," was not being used at all, let alone in Rose's business and over an authorized route. The Buick was not a listed vehicle so as to be "covered." Hence, Paragraphs 1, 2 and 4, of the "Who Is Insured" section, do not apply to establish coverage under the circumstances. The other two paragraphs thereof, Paragraphs 3 and 5, are in no manner applicable.
In spite of the fact that Mrs. Coleman was not an insured in the instant situation under the language of the subject policy, appellees nevertheless argue that UM coverage must exist as a matter of law and public policy. They contend that in the absence of specific provisions regarding UM coverage, the policy definitions establishing liability coverage cannot be used to determine UM protection. However, in Babin v. State Farm Mutual Automobile Insurance Company, 504 So.2d 558 (La. App. 1st Cir.1986), writ denied, 504 So.2d 877 (La.1987), the court utilized just such an approach in a situation in which UM coverage was automatically "written into" a policy which was otherwise silent on the subject.
Appellees further assert that the owner of a covered vehicle listed in a policy cannot be insured some of the time and not insured at other times for UM purposes. It is correct, of course, that an insured's mandated coverage cannot be restricted to occasions on which he is occupying a particular vehicle. Branch v. O'Brien, 396 So.2d 1372 (La.App. 2d Cir.1981), writ denied, 400 So.2d 905 (La.1981). However, we are aware of no requirement that the owner of a covered vehicle must be afforded UM coverage regardless of whether or not such owner qualifies as an "insured" under the appropriate policy language. In fact, for coverage to be afforded one must first be an "insured," regardless of whether one owns a vehicle covered under a policy providing UM coverage. See Morris v. Mitchell, 451 So.2d 192 (La.App. 1st Cir.1984).
In light of the foregoing, we conclude that the trial court improperly denied Empire's motion for summary judgment.

THE SAFFEL APPEAL
Mr. Bobby R. Saffel filed suit for the wrongful death of his wife. He also asserted a similar cause of action as the tutor of his daughter, Christi, for her mother's wrongful death. At trial, the remaining defendants were Bamburg, Shelter and Economy. Judgment for $50,000, plus funeral expenses, was awarded Mr. Saffel on his own claim, subject to a credit for funds previously received from Hartford and State Farm. Mr. Saffel also received $100,000 for his daughter's claim.
Bamburg alone was cast in judgment for all such amounts. The jury found that Bamburg was neither a resident of, nor living in, the household of either his mother or father as required for coverage by the Shelter and Economy policies. Consequently, all demands against his parents' insurers were rejected. Plaintiffs have appealed, contending the jury erred in its conclusion. We affirm.
James Bamburg was a 23-year-old divorcee with two children. His parents had been separated for 14 years, but their marriage never had been judicially terminated. After his parents' separation Bamburg never lived with his mother, although he visited occasionally. In April of 1983, some six months before the accident, he began living in a trailer with Chris McCain, to whom he paid rent. Some three to four weeks before *992 the accident, he was in Shreveport searching for employment. While there he stayed at the home of his cousin, Jim Jiles, but both Bamburg and his mother testified he spent one or two nights in her home in the Shreveport area. However, he had no key to her house, and kept no clothes or furniture there. Neither Bamburg nor his mother considered her house to be his residence. Although he indicated in a discovery deposition that he was at his mother's while in Shreveport, he explained at trial that he meant that he was there some during the day, spending only the one or two nights.
While admitting he had lived with his father before moving to the trailer, Bamburg stated that he did not recall spending a night at his father's home after he moved in with Mr. McCain. Some of Bamburg's old clothes possibly were left at his father's, although Mr. Bamburg testified that his son took all of his possessions with him when he moved to the trailer. Mr. Bamburg's post office box was where his son received his mail, but several other relatives apparently received their mail at the same location. Bamburg did state that he used his father's address when he had initially registered to vote, and he felt he needed no permission to go to his father's house. Both Bamburg and his father stated that neither of them considered Bamburg a resident of the household.
The determination of an issue of residency is to be made from all the facts of each particular case. Taylor v. State Farm Mutual Automobile Insurance Co., 248 La. 246, 178 So.2d 238 (1965). A jury's finding of fact should be affirmed unless characterized by manifest error, and should not be upset except in the most compelling and clearest case of error. Ritchie v. S.S. Kresge Co., Inc., 505 So.2d 831 (La.App.2d Cir.1987), writ denied, 507 So.2d 227 (La. 1987). Having reviewed the record, we conclude that the jury's determination was not erroneous.

CONCLUSION AND DECREE
For the foregoing reasons, that portion of the judgment against Empire Fire and Marine Insurance Company is reversed and the Colemans' demand in that respect rejected at their cost. That portion of the judgment from which an appeal was taken in the Saffel suit is affirmed, costs to be borne by appellants.
REVERSED IN PART, AFFIRMED IN PART, AND RENDERED.