897 So.2d 634 (2004)
Loyetta COLLINS
v.
Charles FARRIS, Salsbury's Dodge City, Inc., and Federated Mutual Insurance Company.
No. 2003 CA 1991.
Court of Appeal of Louisiana, First Circuit.
November 3, 2004.
*636 Richard G. Whitworth, Boudreaux & Whitworth, Baton Rouge, for Plaintiff-Appellant Loyetta Collins.
Bruce A. Cranner, Douglas P. Matthews, Gary L. Hanes, Frilot, Partridge, Kohnke & Clements, L.C., New Orleans, for Defendant-Appellee Evanston Insurance Company.
Before: FOIL, PARRO, and KUHN, JJ.
PARRO, J.
In this personal injury case, Loyetta Collins appeals a summary judgment in favor of her employer's business automobile liability insurance company, Evanston Insurance Company (Evanston), dismissing her claims against Evanston for uninsured/underinsured motorist (UM) coverage on that policy. We affirm.

FACTUAL AND PROCEDURAL BACKGROUND
On February 13, 1999, Collins was driving her own car and making pizza deliveries for her employer, RPM Pizza, Inc. (RPM), when she was injured as the result of a hit and run accident. She sued the *637 owner and the operator of the other vehicle[1] and also sued Evanston, seeking coverage under the UM provisions of the business automobile liability policy issued to RPM. Evanston eventually filed a motion for summary judgment, seeking the dismissal of Collins' claims. She opposed the motion and filed a motion for partial summary judgment, seeking a finding of coverage under the UM provisions of the Evanston policy. Both motions were heard on May 19, 2003, and judgment was rendered in favor of Evanston. In oral reasons for judgment, the trial court stated:
I think that the policy, under Part Four, Section [C-4], excludes coverage in this instance. Bodily injury to any employee of the insured arising out of and in the course of his employment by the insured. Because the exclusion is clear on its face, not ambiguous at all, I'm going to grant summary judgment in favor of the defendant and deny the motion for partial summary judgment on behalf of the plaintiff.
On June 3, 2003, the trial court signed a judgment denying Collins' motion for partial summary judgment, granting Evanston's motion for summary judgment, and dismissing Collins' claims against Evanston.
Collins has appealed that judgment. In her first assignment of error, she claims the trial court erred in holding that the referenced employee exclusion removed her from liability coverage, and thus, from UM coverage under the policy. Her second assignment of error is that the trial court erred in failing to find omnibus coverage for her UM claims under the policy. In her third assignment, she challenges the court's conclusion that she did not have UM coverage as an employee, just because the only named insureds under the policy were corporations. Finally, she contends that ambiguity in the policy should have been interpreted in favor of coverage and against Evanston.

APPLICABLE LAW

Summary Judgment
In determining whether summary judgment is appropriate, appellate courts conduct a de novo review of the evidence, employing the same criteria that govern the district court's determination of whether summary judgment is appropriate. Schwehm v. Jones, 03-0109 (La.App. 1st Cir.2/23/04), 872 So.2d 1140, 1144. The issue of whether an insurance policy, as a matter of law, provides or precludes coverage is a dispute that can be resolved properly within the framework of a motion for summary judgment. Johnson v. Allstate Ins. Co., 95-1953 (La.App. 1st Cir.5/10/96), 673 So.2d 345, 347, writ denied, 96-1292 (La.6/28/96), 675 So.2d 1126. When the issue before the court on the motion for summary judgment is one on which the party bringing the motion will bear the burden of proof at trial, the burden of showing that there is no genuine issue of material fact is and remains on the party bringing the motion. See LSA-C.C.P. art. 966(C)(2); Richardson v. Lott, 03-0189 (La.App. 1st Cir.11/7/03), 868 So.2d 64, 69, writ denied, 03-3324 (La.2/13/04), 867 So.2d 707.
An insurer seeking to avoid coverage through summary judgment has the burden of proof that coverage is not provided under the policy. See Gaylord Chemical Corp. v. ProPump, Inc., 98-2367 (La.App. 1st Cir.2/18/00), 753 So.2d 349, 352; Smith v. Terrebonne Parish Consol. *638 Gov't, 02-1423 (La.App. 1st Cir.7/02/03), 858 So.2d 671, 673. Summary judgment declaring a lack of coverage under an insurance policy may not be rendered unless there is no reasonable interpretation of the policy, when applied to the undisputed material facts shown by the evidence supporting the motion, under which coverage could be afforded. Reynolds v. Select Properties, Ltd., 93-1480 (La.4/11/94), 634 So.2d 1180, 1183; Brown v. Coregis Ins. Co., 99-0048 (La.App. 1st Cir.2/18/00), 752 So.2d 347, 352.

Interpretation of Insurance Policy
An insurance policy is a contract between the parties and should be construed using the general rules of interpretation of contracts set forth in the Civil Code. Louisiana Ins. Guar. Ass'n v. Interstate Fire & Cas. Co., 93-0911 (La.1/14/94), 630 So.2d 759, 763; see LSA-C.C. arts. 2045-2057. Analysis should begin with a review of the words in the insurance contract, and the contract must be enforced as written when the words are clear and explicit and lead to no absurd consequences. See LSA-C.C. art. 2046; Dyess v. American Nat. Prop. & Cas. Co., 03-1971 (La.App. 1st Cir.6/25/04), 886 So.2d 448, 451. If, after applying the other general rules of construction, an ambiguity remains, the ambiguous contractual provision is to be construed against the insurer who issued the policy and in favor of the insured. Smith v. Matthews, 611 So.2d 1377, 1379 (La.1993); see LSA-C.C. art. 2056.

UM Coverage
Under Louisiana's UM statute,[2] automobile liability insurance delivered or issued for delivery in Louisiana and arising out of the ownership, maintenance, or use of a motor vehicle registered in Louisiana and designed for use on public highways must provide UM motorist coverage equal to the liability coverage provided to the insured for bodily injury, unless UM coverage has been validly rejected or lower UM limits have been selected. Jones v. Henry, 542 So.2d 507, 508 (La.1989). The object of UM coverage is to provide full recovery for automobile accident victims who suffer damages caused by a tortfeasor who is not covered by adequate liability insurance. Henson v. Safeco Ins. Companies, 585 So.2d 534, 537 (La.1991). Exclusionary provisions in automobile liability insurance policies are to be strictly construed in favor of coverage. State Farm Mut. Auto. Ins. Co. v. Noyes, 02-1876 (La.App. 1st Cir.2/23/04), 872 So.2d 1133, 1136.
Although Louisiana's public policy strongly favors UM coverage and a liberal construction of the UM statute, it is well-settled that a person who does not qualify as an insured for liability coverage under a policy of insurance is not entitled to UM coverage under the policy. Magnon v. Collins, 98-2822 (La.7/7/99), 739 So.2d 191, 196. UM coverage attaches to the person of the insured, not the vehicle, and any person who enjoys the status of insured under a Louisiana motor vehicle liability policy which includes UM coverage enjoys such coverage protection simply by reason of having sustained injury by an uninsured or underinsured motorist. Howell v. Balboa Ins. Co., 564 So.2d 298, 301-02 (La.1990). As such, any determination of whether a plaintiff is entitled to UM benefits must follow a determination that the plaintiff is an insured for purposes of auto liability insurance coverage. Magnon, 739 So.2d at 196.
*639 It is necessary to ascertain initially whether the insurance policy provides liability coverage to the employee, or merely protects the employer against an employee's negligent act while driving a non-owned vehicle. Louisiana's UM statute requires that UM coverage be provided to those persons who are insured under a policy providing for liability insurance. Simply stated, if the policy provides liability coverage for the protection of the employee, then under the statute, UM coverage must be provided to the employee. If, on the other hand, the liability coverage under the policy is for the protection of the employer, then under the statute, uninsured motorists coverage must be provided only to the employer. Thomas v. Allstate Ins. Co., 321 So.2d 808, 809-10 (La.App. 4th Cir.1975); Babin v. State Farm Mut. Auto. Ins. Co., 504 So.2d 558, 559 (La.App. 1st Cir.1986), writ denied, 504 So.2d 877 (La.1987).

Omnibus Coverage
An "omnibus clause" is a clause in an insurance policy that extends the term "insured" to include not only the named insured, but also any other person while using the named insured's vehicle, provided the use of the vehicle is with the named insured's permission or consent. See Green v. Bailey, 29,759 (La.App. 2nd Cir.8/20/97), 698 So.2d 715, 717. Even if not provided by a policy, a driver may have liability coverage by application of Louisiana's statutory omnibus clause. In addition to requiring that the named insured/vehicle owner be covered by liability insurance,[3] Louisiana's automobile insurance law requires omnibus coverage in favor of any person using an insured vehicle with the permission or consent of the named insured. Noyes, 872 So.2d at 1136; Joseph v. Dickerson, 99-1046 & 1188 (La.1/19/00), 754 So.2d 912, 917. Louisiana Revised Statute 32:900(A) defines a "motor vehicle liability policy" as an owner's or operator's policy of liability insurance "certified as provided in R.S. 32:898 or 32:899 as proof of financial responsibility...." An owner's motor vehicle liability policy "[s]hall designate by explicit description or by appropriate reference all motor vehicles with respect to which coverage is thereby to be granted." LSA-R.S. 32:900(B)(1). Under LSA-R.S. 32:900(B)(2), an owner's motor vehicle liability policy:
Shall insure the person named therein and any other person, as insured, using any such motor vehicle or motor vehicles with the express or implied permission of such named insured against loss from the liability imposed by law for damages arising out of the ownership, maintenance, or use of such motor vehicle or motor vehicles within the United States of America....

EVALUATION OF THE EVIDENCE AND ARGUMENTS
Evanston contends that, because Collins was not insured for liability coverage under its policy, she was not entitled to UM coverage. According to Evanston, she was not insured for liability coverage because she was neither a named insured nor an omnibus insured. Additionally, the policy excluded liability coverage for bodily injury to employees arising out of and in the course of employment.
In support of its arguments, Evanston submitted the affidavit of Glenn Mueller, the president of RPM, who identified the attached policy and acknowledged it was in effect when this accident occurred. He *640 stated the purpose of the policy was to provide RPM and the other named insureds[4] with liability coverage for automobiles owned by the corporations and for vicarious liability the corporations might have as a result of the use of employee-owned automobiles for pizza deliveries. Mueller also said that all employees who deliver pizza for RPM are required to use their own vehicles and to provide their own liability insurance coverage. Employees are informed of this when hired and are required to provide proof of liability insurance on their vehicles. Mueller stated he was familiar with the policy, and no employee, including Collins, was a named insured. Liability coverage was provided only for named insureds. A policy exclusion stated that bodily injury to any employee of the insured arising out of and in the course of his or her employment by the insured was excluded from liability coverage.
A copy of Evanston's "Business Automobile Liability Non Ownership For Delivery Service" policy was attached to Mueller's affidavit.[5] Item One of the Declarations page showed the named insureds as RPM Pizza, Inc. and 2003 Realty Corporation. In Item Four, the operations to be covered were stated to be "Pizza Delivery." Item Six showed there were endorsements for UM coverage,[6] corporation owned vehicles, and additional insureds. Part I, the definitions section of the policy, provided that:
A. "You" and "your" mean the person or organization shown as the named insured in ITEM ONE of the declarations.
* * *
D. "Auto" means a non owned or hired motor vehicle, while used to deliver food on behalf of the Named Insured, or for the miscellaneous errands necessary to the business of the Named Insured.
* * *
E. "Insured" means any person or organization qualifying as an insured in the WHO IS INSURED section of the applicable insurance. Except with respect to our limit of liability, the insurance afforded applies separately to each insured who is seeking coverage or against whom a claim is made or suit is brought.
Part IV, the liability insurance provisions, stated:

A. WE WILL PAY.
1. We will pay all sums the insured legally must pay as damages because of bodily injury or property damage to which this insurance applies, caused by an accident and resulting from the ownership, maintenance or use of a covered auto, in excess of the deductible amount stated in the declarations.
* * *

C. WE WILL NOT COVER  EXCLUSIONS.
This insurance does not apply to:

*641 * * *
4. Bodily injury to any employee of the insured arising out of and in the course of his or her employment by the insured. However, this exclusion does not apply to bodily injury to domestic employees not entitled to workers' compensation benefits.

D. WHO IS INSURED.
1. You are an insured for any covered auto.
Part V of the policy had additional conditions, including:

B. OTHER INSURANCE
1. For any covered auto you don't own, the insurance provided by this policy is excess over any other collectible insurance.
In support of her motion for partial summary judgment, Collins submitted a copy of the Evanston policy, a copy of the accident investigation report, Evanston's response to her requests for admissions of fact, a copy of the required form for rejection or modification of UM coverage, and a copy of portions of the record in the case of Thigpen v. RPM Pizza, Inc., 99-1146 (La.App. 1st Cir.9/22/00), 772 So.2d 704, writ denied, 01-0114 (La.3/30/01), 788 So.2d 1189. The admissions of fact indicate the parties agree Collins was an RPM employee and was within the course and scope of her employment when she was injured in an automobile accident, which occurred while she was delivering pizzas in her own vehicle. They also agree that on the day of the accident, Evanston had in full force and effect a policy of insurance that insured her employer, RPM, and provided UM coverage.
One of Collins' arguments in the trial court and in this court involves the Thigpen case, which addressed the UM coverage issue in a similar situation with the same employer and the same insurance policy. This court reversed the trial court's summary judgment in favor of Evanston, but the only issue addressed in the Thigpen appeal was the adequacy of the UM waiver form. Following that decision, Evanston filed another motion for summary judgment in the trial court, raising the same issues as are being considered in this case. Its motion was denied, and in an unpublished writ action, this court denied the writ application for failure to comply with several of this court's rules. Thigpen, 01-2541 (La.App. 1st Cir.12/14/01) (unpublished writ action). However, although the re-filed motion for summary judgment in the Thigpen case raised the issues being considered in this case, the writ denial by this court was not a decision on the merits of those issues. Therefore, the Thigpen decision has no relevance to the issues in this case, because those issues were not addressed by this court in either the appeal or the subsequent writ denial.
The first step in this court's legal analysis must be whether Collins is an "insured" under the liability provisions of the policy, even though she concedes that she is not a named insured. The liability provisions state the insurer will pay damages the insured legally must pay, if those are caused by an accident resulting from the use of a covered auto. Looking at this provision, it says only that the insurer would pay damages if RPM, a named insured, was called upon to pay damages. RPM contends this provision is intended to cover its potential vicarious liability for damages that might be caused by its employees while delivering pizzas on its behalf in their own vehicles. For that reason, the covered autos include non-owned vehicles. Vehicles owned by the named insured corporations are covered in a separate endorsement. There is no endorsement *642 or other provision in the policy providing Collins with "insured" status for liability coverage.[7] Any determination of whether a plaintiff is entitled to UM benefits must follow a determination that the plaintiff is an insured for purposes of auto liability insurance coverage. Magnon, 739 So.2d at 196. Thus, the threshold requirement of finding liability coverage before finding UM coverage for Collins in the policy does not exist.
Contrary to Collins' arguments, this conclusion does not conflict with this court's decision in the Babin case. The exclusion relied on by the trial court states that liability insurance does not apply to "bodily injury to any employee of the insured arising out of and in the course of his or her employment by the insured." Collins claims the trial court erred in interpreting this provision as excluding her from liability and UM coverage, when this court interpreted identical provisions in a similar situation in the Babin case and determined UM coverage was not precluded. Babin, 504 So.2d 558. In that writ action, Babin was a truck driver who sought UM coverage under his employer's liability policy for injuries he suffered in a collision while hauling goods on behalf of his employer using his own truck, which was leased to his employer. The trial court denied the insurer's motion for summary judgment, and the insurer applied for a supervisory writ. This court initially granted the writ after concluding that Babin "was not an insured" under his employer's policy, and that the liability portion of the policy simply was not intended to cover the owner of a vehicle who was an employee of the named insured corporation and had leased his vehicle to the employer before using it with the employer's permission. Babin, 504 So.2d at 560. On rehearing, this court reviewed a policy endorsement it had not previously addressed, under which liability coverage was extended in a typical "omnibus clause" to "any other person while using an owned automobile or a hired automobile with the permission of the named insured" if he was "engaged in the business of transporting property by automobile for the named insured...." Babin, 504 So.2d at 560 (on rehearing). Based on this endorsement, this court determined Babin "was an insured under the ... policy," and there was coverage "unless he falls under an exclusion." As Collins argues, this court did interpret the exclusion more narrowly than its wording would indicate, finding it did not necessarily preclude all kinds of liability coverage under the policy, and concluded, therefore, that the trial court's denial of the motion for summary judgment was correct. However, that interpretation of the exclusion followed this court's initial finding that Babin was an insured under the policy. In the case we are reviewing, it is not necessary to interpret or apply the employee exclusion, because there was no provision in the policy itself by which Collins was an insured for liability coverage.[8]
She contends, however, that even if she was not insured for liability coverage under the policy itself, she should be covered for liability under the mandatory provisions of Louisiana's statutory omnibus *643 clause, LSA-R.S. 32:900(B)(2). Collins argues that she was driving a covered auto, as that term was defined in the policy (a non-owned motor vehicle, while used to deliver food on behalf of the named insured), and was engaged in covered operations (pizza delivery) on behalf of her employer, and for that reason was covered as an omnibus insured. However, the statutory omnibus clause applies only to owners' policies. See LSA-R.S. 32:900(B). It is the responsibility of the registered owner of a vehicle to maintain the minimum liability coverage required by law for that vehicle. LSA-R.S. 32:861(A)(2) and LSA-R.S. 32:900(B); Parker v. American Guar. & Liability Ins. Co., 93-1556 (La.App. 1st Cir.5/20/94), 637 So.2d 788, 791. The statutory omnibus clause requires the owner's policy of liability insurance to extend that minimum liability coverage to a third person while using an insured vehicle when the named insured has given implicit or explicit permission to that third person to use the named insured's owned vehicle. In the case before us, RPM did not own the vehicle Collins was driving. Therefore, the statutory omnibus clause is inapplicable to this situation.
Based on the foregoing, we conclude that Collins was neither a named insured under the Evanston policy nor an omnibus insured under the policy or the statutory omnibus clause. Because the Evanston policy did not provide liability coverage for Collins in this situation, she could not claim UM coverage under that policy. Having reached this conclusion, we do not reach the issue of the interpretation of the employee exclusion. Moreover, we find no ambiguity in the Evanston policy provisions, when read in conjunction with applicable law, such that the policy should, for that reason, be interpreted in her favor.

CONCLUSION
Based on the foregoing, we affirm the trial court judgment granting Evanston's motion for summary judgment and dismissing Collins' UM claims against it. All costs of this appeal are assessed against Collins.
AFFIRMED.
NOTES
[1] Salsbury's Dodge City, Inc., an automobile dealership, owned the car. It was being operated for a "test drive" by Charles Farris when the accident occurred.
[2] Formerly in LSA-R.S. 22:1406(D), the UM provisions were amended and re-designated as LSA-R.S. 22:680 by 2003 La. Acts, No. 456, § 3. We note, however, that the changes to the statute did not affect any of the issues in this case.
[3] We recognize that LSA-R.S. 32:900(L)(1) now authorizes the exclusion of the named insured from liability coverage by written agreement between the insurer and the named insured, but that provision is not applicable in this case.
[4] The other named insureds on the policy were 2003 Realty Corporation and, by endorsement, Domino's Pizza, L.L.C. and Domino's Pizza, Inc.
[5] Collins also submitted a copy of the Evanston policy.
[6] The UM endorsement showed that UM coverage was rejected. However, the "corporation owned vehicles" endorsement stated that UM coverage, personal injury protection, and medical payments coverage was to be provided for those vehicles only. The UM waiver form used to reject UM coverage was the subject of this court's opinion in Thigpen v. RPM Pizza, Inc., 99-1146 (La.App. 1st Cir.9/22/00), 772 So.2d 704, writ denied, 01-0114 (La.3/30/01), 788 So.2d 1189, which held the rejection was ineffective.
[7] Many policies include an "omnibus clause," stating that under certain conditions, persons using a covered automobile with the permission of the named insured are additional insureds under the policy. This policy has no "omnibus clause," which is not to be confused with Louisiana's statutory omnibus clause considered elsewhere in this opinion.
[8] Because it was not necessary to interpret or apply the employee exclusion, we express no opinion as to whether the trial court's interpretation of that clause was correct or whether it conflicted with this court's interpretation in the Babin case.